IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT A. MURRAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | No. 14 C 6142 <br><br> Magistrate Judge <br> Maria Valdez |

# MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying a claim of Robert A. Murray ("Claimant") for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Claimant's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

On April 14, 2011, Claimant filed claims for Disability Insurance Benefits, alleging disability since December 12, 2006. (R. 144.) The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 12, 2012.

Claimant personally appeared and testified at the hearing and was represented by counsel. Vocational expert Cheryl Hoiseth also testified.

On January 23, 2013, the ALJ denied Claimant's claims for Disability Insurance Benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.   FACTUAL BACKGROUND

### A.   Background

Claimant was born on December 12, 1969 and was forty-three years old at the time of the ALJ hearing. He worked as a manager at various auto-repair and oil-change business until December 2006, when he injured his back while moving a 55-gallon drum down some stairs at work. (R. 41, 44, 227.)

### B.   Medical Evidence

Claimant suffers from numerous ailments, including arthritis in both knees and lumbar stenosis. His treatments for his orthopedic conditions have included surgery on both knees and on his back, multiple injections, oral pain medications, and physical therapy. (*See, e.g.,* 375-76, 444-52, 555, 565-67.) He also has periodic atrial fibrillation characterized by irregular heartbeats and chest discomfort, which is treated with medication. (R. 301-15, 332-35.) He has obesity classified as Level III or "extreme" obesity, with a body mass index of over 40. *See* SSR 02-01p; R. 759.

Claimant's cardiologist has recommended lap band surgery to help with his obesity and heart health, but he does not have insurance to cover it. (R. 45, 611.) He is also being treated for anxiety. (R. 751.)

Bruce J. Montella, M.D., Claimant's treating orthopedic surgeon, indicated in a letter dated February 2009, that Claimant's 2006 work-related injuries were "consistent with lumbar disk injury and left knee chondral injury." He further opined that Claimant had permanent functional impairments, and had lost 70% of his functional ability with respect to his back and 80% of his functional ability with respect to his left knee. He recommended an ongoing course of epidural injections, low-dose narcotic pain medications, and therapy. (R. 583.)

In a consultative exam performed on August 3, 2011, Dr. Scott A. Hale noted that Claimant was not limping and did not need a cane. Claimant reported continued pain in his low back with radiation to both legs. He could sit for only half an hour. He had no knee complaints and was able to take public transportation. He had a limited range of motion in all directions in his lumbar spine, and normal ranges of motion elsewhere. (R. 513–20.)

On August 24, 2011, state agency reviewer Donald Cochran, Ph.D. reviewed Claimant's file and confirmed his history of an anxiety-related disorder with panic. (R. 530, 535.) He found that Claimant moderate difficulties in the activities of daily living, mostly secondary to physical problems, and moderate difficulties in maintaining social functioning. (R. 530, 535, 540, 542.) On the same day, Dr. Cochran completed a Mental Residual Functional Capacity Assessment determining

that Claimant had some moderate limitations in understanding and memory, and in sustained concentration and persistence, but that his anxiety was not severe enough to preclude substantial gainful activity. (R. 544–546.)

On August 31, 2011, state reviewer Vidya Madala, M.D. reviewed Claimant's medical file and determined that he has the capacity to lift twenty pounds occasionally and ten frequently; to sit or stand/walk for up to six hours in a normal workday; and to occasionally climb raps and stairs, balance, stoop, kneel crouch, or crawl. (R. 548-50.) He should avoid concentrated exposure to hazards. (R. 552.) The assessments of Dr. Cochran and Dr. Madala were affirmed by two other state reviewing doctors in late 2011. (R. 558-60.)

On November 11, 2012, Plaintiff's primary care physician, Dr. Mark E. Collins, M.D., provided an opinion as to Claimant's remaining functional capacity. (R. 767-73.) Dr. Collins indicated that Claimant's leg and knee impairments and heart palpitations leave him unable to sit, stand, or walk for even fifteen minutes before he needs to shift position. He needs to elevate his legs to waist level when sitting to avoid pain, can sit for less than one hour cumulatively in a workday, and can stand or walk for less than one hour cumulatively in a workday. (R. 768-69.) Dr. Collins also indicated that Claimant needs periods of rest or lying down totaling less than one hour in an eight-hour workday. (R. 771.) He requires occasional cane use for prolonged ambulation only. (R. 772.) He is likely to be absent from work more than three days per month as a result of his impairments. (R. 773.)

C.  **Claimant's Testimony**

At his hearing, Claimant testified that he experiences pain spreading out from the middle of his back and shooting into his legs. (R. 44-45.) At the hearing, his pain was at a level of six or seven out of ten. (R. 45.) He estimated that he can walk fifteen to thirty feet at a time, and can only stand or sit for a few minutes before shifting position. (R. 46.) He has had surgery and injections for his left knee, but the pain has not improved. (R. 54.) The right knee gives out, despite surgery. (R. 55.) He uses medications that make him tired. (R. 45.) He ices his knee and back, elevates his legs, and uses a transcutaneous electrical nerve stimulation (TENS) unit at home to relieve the pain in his knees and back. (R. 57, 59.) He is "terrified" of stairs and takes them one at a time, and has trouble returning upright after retrieving objects from a low shelf. (R. 47.) He uses a cane only "every once in a while" on "really bad days." He described his arrhythmias as a feeling of being faint, with his heart going fast or "off beat." (R. 58.)

Claimant testified that he sleeps only an hour or two at a time due to pain, for a total of about four or five hours a night plus one or two more hours during the day. The heaviest thing he lifts is a twelve-pack of soda. He prepares sandwiches, rinses dishes, loads the dishwasher, makes his bed, and walks the dog to a spot of grass fifteen or twenty feet from his door, sometimes using his mother's motorized wheelchair to do so. He cannot do laundry or vacuum. His mother has a care giver who comes to the home and does most of the chores. Claimant accompanies the caregiver to the store to help her select the right items, but then he goes to wait in

5

the car. He takes medication for anxiety, and last had a panic attack in 2010. (R. 46–52.)

### D. Vocational Expert Testimony

The ALJ asked Vocational Expert ("VE") Cheryl Hoiseth whether there were jobs that could be performed by a hypothetical person with the same age, education, and work experience as Claimant, and a residual functional capacity ("RFC") limiting him to light work with certain enumerated restrictions. The VE answered in the affirmative. The ALJ next asked the VE to consider an individual of Claimant's age, education and work experience who can carry up to ten pounds only occasionally and less than ten pounds frequently; can stand or walk for a total of two hours in an eight-hour workday; can sit for at least six hours in an eight-hour workday but must be allowed to stand one to two minutes after each 45 minutes of sitting, and who has the following additional restrictions: such person must never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; can only occasionally balance, stoop, crouch, kneel, crawl, bend, or twist; should avoid concentrated exposure to hazards; is limited to jobs with three to four steps involving simple and routine tasks; and can have no contact with the general public and only occasional contact with coworkers and supervisors. The VE testified that the person could perform the jobs of officer clerk, bench assembler, and hand packager. She confirmed that such person could use a cane, as needed, to get to and from the workstation. A person who could sit or stand for less than fifteen minutes at a time, less than an hour total per workday, and could never balance, could not

6

work. The customary tolerance for absences from the workplace would be two-thirds of a day per month during the first ninety days, or one day per month thereafter. (R. 61–64.)

## E. ALJ Decision

The ALJ found at step one that Claimant did not engage in substantial gainful activity from his alleged onset date of December 12, 2006 through his date last insured of December 31, 2011. At step two, the ALJ concluded that Claimant had severe impairments of obesity, atrial fibrillation, L5 stenosis with a history of back surgery, status post right knee surgery, status post left knee surgeries, and generalized anxiety disorder. The ALJ concluded at step three that Claimant's impairments, alone or in combination, do not meet or medically equal a Listing. (R. 21–23.) The ALJ then determined that Claimant retained the RFC to perform sedentary work, with the following limitations: He should never climb ladders, ropes, or scaffolds; should no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, bend, and twist. He should additionally have a sit/stand option such that after sitting for forty-five minutes, he could stand for one to two minutes, and he should be able to use a cane, as needed, to get to and from his workstation. He should avoid concentrated exposure to work hazards, should have no public contact and no more than occasional contact with co-workers and supervisors, and should be limited to three to four step, simple, repetitive, and routine tasks. The ALJ concluded at step four that Claimant could not perform his past relevant work. At step five, based upon the VE's testimony and Claimant's age,

7

education, work experience, and RFC, the ALJ concluded that Claimant, during the relevant period, remained able to perform jobs existing in significant numbers in the national economy, leading to a finding that he was not disabled under the Social Security Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts

to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, or resolving conflicts in evidence. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Claimant argues that the ALJ's decision must be remanded because: (1) the ALJ performed a faulty step three analysis; (2) the ALJ erroneously discounted Claimant's credibility, improperly giving little or no weight to the opinions of his treating sources; and (3) the ALJ failed to consider the effects of Claimant's obesity in connection with his other impairments.

10

## A. The ALJ's Step Three Analysis

In order to be found disabled at step three, a claimant must present medical findings that meet or equal in severity all of the criteria specified by one of the impairments described in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (unpublished opinion). Here, Claimant finds fault with the ALJ's analysis of his impairments as they relate to Listing 1.02, Major dysfunction of a joint; Listing 1.03, Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; Listing 1.04, Disorders of the spine; and Listing 4.05, Recurrent arrhythmias.

### *1. Listings 1.02 and 1.03: Claimant's Knee Impairments*

The ALJ found that Claimant's knee impairments do not meet or equal the severity of impairments listed at Listing 1.02 and 1.03. When applied to knees, both Listing 1.02 and 1.03 can only be met where there the impairment causes "an inability to ambulate effectively," which is further defined by the regulations as an "extreme limitation of the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B.2.b. The ALJ cited several treatment and examination notes as evidence that Claimant "has demonstrated the ability to ambulate effectively." (R. 22.) These included a medical note from November 2007 in which Claimant reported to Gregory T. Brebach, M.D. that he had "pain in his calves with walking," (R. 227); a February 2011 medical note dictated by Bruce J. Montella, M.D. noting that Claimant's gait was normal and he was able to heel and toe walk bilaterally, (R. 399); an August 2011 examination note of Scott A. Kale, M.D. indicating that

11

Claimant was not limping and did not need a cane to walk fifty feet, (R. 512-13, 521); and an April 2012 examination note by Howard Freedberg noting that Claimant "cannot walk long distances" and has difficulty with stairs, needing to take them one at a time, (R. 565). Later in her opinion, the ALJ also noted that Claimant is able to use public transportation independently. Claimant, in contrast, argues that his pain in walking, his difficulty in climbing stairs, and his inability to stand for prolonged periods demonstrate that he is unable to ambulate effectively. To support this proposition he further points to the opinion of Dr. Collins, which states *inter alia* that Claimant requires "occasional cane" usage for "prolonged ambulation" or standing, but not for "all ambulation" or walking "on uneven surfaces." (R. 772.)

Claimant misconstrues the standard for ineffective ambulation under Listings 1.02 and 1.03. Examples of an "extreme inability to walk" provided by the regulations include an inability to ambulate sufficiently to carry out daily activities without the assistance of a walker, two crutches, or two canes; the inability to use standard public transportation; the inability to climb a few steps at a reasonable pace with the use of a single hand rail; or the inability to walk a block at a reasonable pace or across rough or uneven surfaces. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B.2.b; *see Coleman v. Astrue,* 269 F. App'x 596, 602 (7th Cir. 2008) (unpublished decision). Claimants who walk with a mild limp or who walk with a single cane have been held not to meet this standard. *See Sienkiewicz v. Barnhart,* 409 F.3d 798, 802-03 (7th Cir. 2005); *Featherstone v. Colvin*, No. 13 C 6559, 2016

12

WL 147655, at *4-5 (N.D. Ill. Jan. 13, 2016); *White v. Astrue,* No. 08 C 5441, 2009 WL 2244635, at *4 (N.D. Ill. July 28, 2009). Because Claimant has not presented evidence establishing that he cannot "ambulate effectively" as defined by Section 1.00 of the listings, the ALJ has supported with substantial evidence her conclusion that his impairments do not meet or equal Listings 1.02 or 1.03. *See Filus v. Astrue,* 694 F.3d 863 (7th Cir. 2012).

### 2. *Claimant's Spine Impairments*

Claimant also argues that the ALJ erred in evaluating Listing 1.04, Disorders of the spine. To meet the criteria for this listing, a claimant must show that he meets the baseline criteria an identified spinal disorder which causes "compromise of a nerve root…or the spinal cord," plus the additional criteria of one of three subsections, enumerated subsections A, B, and C. Specifically, Claimant argues that his disorders meet the baseline criteria plus the criteria for subsection A, which are:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The ALJ did not refer to the subsection A criteria. Instead, she found that Claimant did not meet the criteria for Listing 1.04 because he had not shown he had a named disorder "that resulted in the inability to ambulate ineffectively." (R. 22.) While an inability to ambulate effectively is a criteria of subsection C, it is not a required element of subsection A. The ALJ's analysis of this listing is therefore in error.

13

The Commissioner attempts to minimize this flaw by dismissing Claimant's argument as a bare assertion that he meets the criteria for the listing, which would be insufficient to trigger remand. *See Knox,* 327 Fed. App'x. at 655. But in keeping with the burden placed on applicants at step three, Claimant presented evidence both in his pre-hearing brief and before this Court indicating that his spinal disorders of disc degeneration, herniation, and radiculopathy caused decreased motor function, positive straight-leg tests, limited range of motion, paraspinal spasms, numbness, and other symptoms. (R. 141.) It was this evidence that the ALJ was obliged to consider. *See Ribaudo v. Barnhart,* 458 F.3d 580, 583-84 (remanding where ALJ failed to evaluate evidence favorable to claimant in a step-three analysis).

The ALJ erred both in misstating the criteria required to meet Listing 1.04 and in failing to explain how she considered the relevant medical evidence supplied by Plaintiff. Her finding that Claimant does not meet the criteria for Listing 1.04, subsection A is therefore not supported by substantial evidence. This matter must be remanded for the ALJ to consider Claimant's medical evidence in light of the criteria of the listing.

### B. <u>Remaining Arguments</u>

Because the step-three error described above mandates remand, the Court need not address Claimant's remaining arguments at this time. However, on remand, the Commissioner is advised, at step three, to weigh the evidence in light of the specific criteria of each listing at issue, and to consider Claimant's obesity at

14

each step of her analysis in accordance with SSR 02-01p. If Claimant is not found to be disabled at step three, the Commissioner is advised to consider his subjective symptoms in light of the recent guidance provided by SSR 16-3p. *See Qualls v. Colvin,* No. 14 C 2526, 2016 WL 1392320 at *6-7 (N.D. Ill. Apr. 8, 2016).

## CONCLUSION

For the foregoing reasons, Claimant Robert A. Murray's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

SO ORDERED.  ENTERED:

DATE:   **January 25, 2017**            _____
  **HON. MARIA VALDEZ**
  **United States Magistrate Judge**